UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK
_____

DANNY DONOHUE, as President of the Civil Service
Employees Association, Inc., Local 1000, AFSCME, AFL-CIO,
and CIVIL SERVICE EMPLOYEES ASSOCIATION, INC.,
LOCAL 1000, AFSCME, AFL-CIO,

                         Plaintiffs,                  **COMPLAINT**

   -against-

                                                         Civil Action No.

DAVID A. PATERSON, as Governor of the State of New
York, NEW YORK STATE ASSEMBLY, NEW YORK
STATE SENATE, JONATHAN LIPPMAN, as Chief Judge of
the New York Unified Court System, and the STATE OF NEW
YORK,

                         Defendants.
_____

      Plaintiffs DANNY DONOHUE, as President of the Civil Service Employees Association, Inc., Local 1000, AFSCME, AFL-CIO, and the CIVIL SERVICE EMPLOYEES ASSOCIATION, INC., LOCAL 1000, AFSCME, AFL-CIO (hereinafter "CSEA") by their attorney, Nancy E. Hoffman (Steven A. Crain and Timothy Connick, of counsel), as and for their Complaint, respectfully set forth as follows:

**NATURE OF PROCEEDING**

      1.     This is an action for declaratory, injunctive and monetary relief challenging the unconstitutional impairment of CSEA's contracts by: (a) imposing a furlough with a resulting 20% reduction of the wages of tens of thousands of CSEA-represented State employees; (b) failing to make financial contributions to the CSEA Employee Benefit Fund, such that the fund will shortly be insolvent with dental, vision and related health benefits thus ending for 208,000 of CSEA-represented State employees, dependants and retirees; and (c) failing to pay, on an

indefinite basis, wage increases that were due on March 25, 2010 and April 1, 2010, to 68,300 CSEA-represented State employees.

## JURISDICTION

2. Federal question jurisdiction exists over the Constitutional contract impairment claims in the Complaint under 28 USC §§ 1331 and 1343(3).

## VENUE

3. Venue is proper under 28 USC § 1391(b) in the United States District Court for the Northern District of New York because the offices of Defendant Governor David Paterson, Plaintiff Donohue, and Plaintiff CSEA headquarters, are all located in Albany, New York. Moreover, the acts complained of occurred in Albany, New York.

## PARTIES

4. Plaintiff DANNY DONOHUE is the duly elected Statewide President of the CSEA and sues herein pursuant to and within the scope of his authority as an elected statewide officer of CSEA.

5. Plaintiff CSEA is a not-for-profit corporation duly organized and existing under the laws of the State of New York, and is an employee organization under the Public Employees' Fair Employment Act, N.Y. Civil Service Law Article 14 ("Taylor Law"), and is the duly recognized collective negotiating representative for, among others, New York State employees in the Administrative Services, Institutional Services, Operational Services, and Division of Military and Naval Affairs negotiating units.

6. Defendant DAVID A. PATERSON, is the Governor of the State of New York, is sued herein in his official capacity, and, is, pursuant to N.Y. Constitution Article IV, §1, responsible for the administration of the Executive Branch of New York State by virtue of his

position.

7. Defendants NEW YORK STATE ASSEMBLY and NEW YORK STATE SENATE, pursuant to N.Y. Constitution Article III, §1, comprise the two houses of the New York State Legislature, in which the legislative power of the State vests.

8. Defendant JONATHAN LIPPMAN is the Chief Judge of the Unified Court System ("UCS"), is sued herein in his official capacity, and is, by virtue of his position, responsible for supervising the administration and operation of the UCS.

9. Defendant STATE OF NEW YORK is the public employer of thousands of CSEA represented employees, and is organized into various agencies for the purposes of providing services to citizens of the State of New York, with its capital located in Albany County, New York.

## STATEMENT OF FACTS

10. CSEA is recognized under the Taylor Law as the "exclusive representative" for collective negotiations and contract administration for approximately 68,300 employees of the Executive Branch of the State of New York.

11. CSEA represents Executive Branch employees in four separate collective negotiations units: the Institutional Services Unit ("ISU"), the Operational Services Unit ("OSU"), the Administrative Services Unit ("ASU"), and the Division of Military and Naval Affairs Unit ("DMNA").

12. CSEA and the State are parties to four collective bargaining agreements, one for each of the four negotiating units represented by CSEA, each covering the period of April 1, 2007 through March 31, 2011 (hereinafter "Agreements").

13. The Executive Branch Agreements were executed by the State and CSEA on

February 1, 2008.

14.     CSEA is also recognized under the Taylor Law as the "exclusive representative" for purposes of collective negotiations and contract administration for approximately 6,200 employees of the UCS.

15.     CSEA and UCS are parties to a collective bargaining agreement covering certain terms and conditions of employment of the UCS employees it represents, for the period of April 1, 2007 through March 31, 2011 (hereinafter "UCS Agreement").

16.     The UCS Agreement was executed by UCS and CSEA on July 21, 2008.

**Failure to Pay 4% Salary Increase on April 1, 2010**

17.     There are two payrolls for Executive Branch employees:  the Administrative payroll and the Institutional payroll.  Every Executive Branch employee covered by the CSEA/State ASU, ISU, OSU, and DMNA collective bargaining agreements is on one of these two payrolls.

18.     In each of the four Executive Branch Agreements, the salary and compensation article, Article 7, provides for salary increases to be implemented in the beginning of each fiscal year covered by the Agreements:  three percent (3%) in 2007-2008, three percent (3%) in 2008-2009, three percent (3%) in 2009-2010, and four percent (4%) in 2010-2011.

19.     At the beginning of fiscal years 2007, 2008 and 2009, the three percent (3%) wage increases provided for in the Agreements were implemented on the dates set forth in each of the Agreements.

20.     The Agreements provide for a four percent (4%) salary increase beginning on April 1, 2010, for the employees on the Administrative payroll and on March 25, 2010, for employees on the Institutional payroll.

21. In April 2010, the Governor failed to introduce legislation to implement the contractual four percent (4%) salary increase contained in the Agreements.

22. There was no budget in place by April 1, 2010, for fiscal year 2010-2011, and therefore the Governor and the Legislature have passed short-term emergency appropriations bills authorizing specific funds to keep the State functioning.

23. These emergency appropriations bills have included funding for salaries for State employees.

24. On or about April 12, 2010, the Governor proposed Program Bill Number 234, authorizing the payment of salaries for Executive Branch employees including employees covered by the four CSEA/State collective bargaining agreements.

25. Because the Institutional and Administrative payrolls contain a two-week salary lag, Program Bill Number 234 covered the first pay period of time during which the four percent (4%) wage increase for fiscal year 2010 was to be reflected in the paychecks of State employees.

26. Program Bill Number 234, enacted as Chapter 35 of the Laws of 2010, stated in relevant part that the salaries paid to State employees "shall not be based on the amounts applicable pursuant to [subparagraphs of] … Section 130 of the Civil Service Law … insofar as such subparagraphs provide for a general salary increase of four percent." (emphasis added).

27. Article VII, Section 4 of the New York State Constitution states in relevant part:

> The Legislature may not alter an appropriation bill submitted by the Governor except to strike out or reduce items therein.

28. Pursuant to Article VII, Section 4 of the New York State Constitution, the Legislature was restricted to either approving or rejecting, in the entirety, the Governor's April 12, 2010, budget allocation bill that omitted the four percent (4%) salary increase. The Legislature approved the bill on April 12, 2010.

29. Each week since April 12, 2010, the Governor has introduced, and the Senate and Assembly have approved, program bills funding Executive Branch employees' salaries, containing the same language as the April 12, 2010, bill, omitting the four percent (4%) salary increase required by the four Agreements.

**Failure to Make Contributions to the CSEA Employee Benefit Fund (EBF)**

30. The EBF provides negotiated dental and optical benefits to the CSEA represented Executive Branch employees, as well as insurance coverage for excess prescription co-pay reimbursement for both State and local government employees covered by EBF contracts.

31. The EBF also provides numerous other benefits to CSEA represented UCS employees, including but not limited to a legal benefit plan, maternity benefits, and hearing aid benefits.

32. The Agreements covering the four Executive Branch negotiating units, as well as the UCS Agreement, require that periodic per cap contributions be made by the State to the CSEA EBF.

33. The contractual provisions requiring contributions to the CSEA EBF provide as follows:

> **Employee Benefit Fund**
>
> **§30.1** The State and CSEA agree that they shall hereinafter enter into a contract to provide for the continuation of the CSEA Employee Benefit Fund that is administered by CSEA to provide certain health and welfare benefits for "employees" as defined herein in the Administrative, Operational and Institutional Services Units and the Division of Military and Naval Affairs.
>
> **§30.2** The State shall deposit in the CSEA Employee Benefit Fund an amount equal to $225.00 per employee for each quarter of the year beginning April 1, 2008 and ending March 31, 2009; $237.50 per employee for each quarter of the year beginning April 1, 2009 and ending March 31, 2010; $250.00 per employee for each quarter of the year beginning April 1, 2010 and thereafter….Such amounts shall be deposited as soon as practicable after the first

day of each quarter.

34. The Governor failed to include in his emergency appropriations bills the funds necessary to make the first quarterly CSEA EBF contribution that was due April 1, 2010, and as a result such contribution has not been made.

35. The UCS Agreement also provides for contributions to the EBF.

36. Article 22, § 22.2(d) of the UCS Agreement provides, "Effective April 1, 2010, the State shall contribute a pro rata annual sum of $1,255 per active employee for remittance to the Employee Benefit Fund.  A pro rata contribution of $627.50 to such Fund shall be made by the State for part-time and per diem employees provided they are working on a regular basis at least half the regular hours of full-time employees in the same title."

37. The UCS Agreement also provides additional contributions to the EBF: Article 14, § 14.5(a) of the Agreement between UCS and CSEA provides, "The parties have agreed that for fiscal years 2008, 2009 and 2010, $250,000 . . . shall instead be contributed to the Employee Benefit Fund provided in Article 22."

38. UCS contributions to the EBF are made quarterly, after vouchers for payment are submitted to UCS for payment.

39. The Governor failed to include in his emergency appropriations bills, the funds necessary for UCS to make its first quarterly EBF contribution that was due on April 1, 2010, as required by the UCS Agreement.

40. As a result, the UCS has failed to make the first contribution due to the EBF subsequent to April 1, 2010, and as a result such contribution has not been made.

41. As a result of not receiving the negotiated contributions to the CSEA EBF, the EBF is required to rely on its reserves to continue to pay benefits.

42. Once the reserves are exhausted, which will occur on or around July 1, 2010, the CSEA EBF will not have sufficient funds to meet its obligations to pay benefits under the EBF plan, including payments to providers.

43. Once payments to providers cease, those providers will sever their relationships with the EBF and will likely not renew such relationships, even when contributions are reinstated and continued, due to EBF's perceived instability, resulting in substantial and irreparable injury to the EBF.

**Imposed Furlough**

44. Each of the four Executive Branch Agreements contains, as an appendix, specific salary schedules denoting the fixed salaries negotiated for employees subject to the Agreements, by grade level and years of service for each year covered by each Agreement.

45. Article 7 of each Agreement refers to the salary schedules.

46. Employees' salaries are governed by, and employees are paid, a base amount of salary denoted on the salary schedule for their grade level and years of service.

47. On May 7, 2010, Defendant Governor submitted an emergency appropriations bill, that was approved by the Legislature on May 10, 2010, which directs that CSEA represented Executive Branch employees are to be furloughed one day per week for an unknown number of weeks.

48. As a result of the furlough, CSEA represented employees will not receive the amount of salary for fiscal year 2010-2011 that corresponds to their grade level and years of service as negotiated by CSEA and set forth on the salary schedules in the four Agreements.

49. Each of the four Executive Branch Agreements, at Article 10 thereof, contains an Attendance and Leave provision that provides, *inter alia*, for the holiday, vacation and sick leave

accruals for employees covered by the agreement.

50. The leave provisions of Article 10 permit employees under certain conditions to utilize accrued paid vacation and sick time during times the employees are on leave from their employment with the State.

51. The emergency appropriations bill submitted by the Governor and approved by the Legislature prohibits Executive Branch employees from utilizing their contractual earned and accrued paid leave time to cover loss of pay for the days they are to be furloughed.

52. CSEA represented employees will thus have no way to offset the substantial loss of income they will incur as a result of the involuntary furlough.

53. The Governor's imposed furlough will also affect retirement system service credit for all furloughed employees, as well as the final average salary computations for those CSEA represented employees who intend to retire in fiscal year 2010-2011, or within two years thereafter, thereby resulting in reduced pension benefits over the remainder of the employees' lives.

54. By reason of Defendants' unconstitutional actions, CSEA represented employees have suffered and will continue to suffer a deprivation of their contractual rights and benefits.

55. Plaintiffs have no adequate or speedy remedy at law for the unconstitutional conduct of Defendants, and this action for injunctive relief is Plaintiffs' only means for securing relief.

## COUNT I

56. Plaintiffs hereby incorporate the allegations above, paragraphs 1 through 55.

57. The United States Constitution, in Article I, § 10, Clause 1, provides, in relevant part:

> No State … shall pass any … law impairing the obligation of contracts.

58. Implementation of public sector collective negotiations agreements in New York State must comply with the Taylor Law, Civil Service Law § 204-a.1.

59. Civil Service Law § 204-a.1 provides that collective bargaining agreements between public employers and employee organizations "shall not become effective until the appropriate legislative body has given approval."

60. Legislative approval for the Agreements required by Civil Service Law § 204-a.1 occurred through the passage of legislation on January 28, 2008. L.2008, Ch. 10, amending Civ. Serv. L. § 130.

61. Legislative approval for the UCS Agreement required by Civil Service Law § 204-a.1 occurred through the passage of legislation on July 7, 2008. L.2008, Ch. 276, amending the Chief Judge's Rules of the Unified Court System § 107.

62. Civil Service Law § 204-a.1 does not make the compensation sections of the collective bargaining agreements conditional or subject to annual legislative appropriations.

63. The Agreements between CSEA and the State, duly approved by the New York State Legislature pursuant to the Taylor Law on January 28, 2008, provide for salary increases of four percent (4%) on April 1, 2010, for employees covered by those agreements.

64. The Governor was required by contract to introduce legislation, and the Legislature was required to pass legislation, providing for the four percent (4%) salary increases contained in the Agreements.

65. On or about April 12, 2010, the Governor proposed and the Legislature passed, the Governor's Program Bill Number 234, omitting the four percent (4%) salary increase for employees covered by Article 7 of the Agreements.

66. Each week since April 12, 2010, the Governor has introduced, and the Senate and Assembly have passed, legislation to pay CSEA covered employees' salaries, omitting the four percent (4%) salary increases.

67. The passage of successive legislative bills since April 1, 2010, that fail to provide for the four percent (4%) negotiated salary increases for CSEA represented employees each constitutes an impairment of contract by legislative act in violation of the impairment clause (Article 1, § 10, Clause 1) of the United States Constitution.

## COUNT II

68. Plaintiffs hereby incorporate the allegations above, paragraphs 1 through 67.

69. The Agreements between CSEA and the State, duly approved by the New York State Legislature pursuant to the Taylor Law on January 28, 2008, provide for quarterly financial payments by the State to the CSEA EBF during each fiscal year covered by the Agreements, including fiscal year 2010-2011.

70. The UCS Agreement, duly approved by the New York State Legislature pursuant to the Taylor Law on July 7, 2008, provides for financial payments by UCS to the CSEA EBF quarterly during each fiscal year covered by the Agreements including fiscal year 2010-2011.

71. The Governor was required by contract to introduce legislation, and the Legislature was required to pass legislation, providing for the contributions to the CSEA EBF as provided for in the Executive Branch Agreements and the UCS Agreement.

72. The Governor has failed to propose a bill that includes funding necessary for

payments to be made to the CSEA EBF as required under the Executive Branch Agreements and under the UCS Agreement.

73. The failure of the Governor to propose a bill since April 1, 2010, that includes funding necessary for payments to be made to the CSEA EBF as required by the Executive Branch Agreements and UCS Agreement constitutes an impairment of contract by legislative act in violation of the impairment clause (Article 1, § 10, Clause 1) of the United States Constitution.

## COUNT III

74. Plaintiffs hereby incorporate the allegations above, paragraphs 1 through 73.

75. The Executive Branch Agreements between CSEA and the State, duly approved by the New York State Legislature pursuant to the Taylor Law on January 28, 2008, specified annual salaries for employees which cannot be diminished by involuntary furloughs.

76. The passage of legislation on May 10, 2010 that provides for an involuntary furlough of CSEA represented employees diminishes the annual salaries set forth in the Agreements between CSEA and the State covering the period 2007 through 2011.

77. The diminishment of annual salaries and the unilateral prohibition of leave usage set forth in the Agreements for the 2010-2011 fiscal year constitutes an impairment of contract by legislative act in violation of the impairment clause (Article 1, § 10, Clause 1) of the United States Constitution.

## COUNT IV

78. Plaintiffs hereby incorporate the allegations above, paragraphs 1 through 77.

79. The combined and cumulative affect of failing to include in legislation funds necessary to provide for negotiated salary levels, vision and dental coverage provided through

the EBF, and salary levels that are specifically set forth in the Executive Branch Agreements constitute an impairment of contract by legislative act in violation of the impairment clause (Article 1, § 10, Clause 1) of the United States Constitution.

**WHEREFORE**, Plaintiffs demand judgment:

(a) Declaring all portions of Chapter 35 of the Laws of 2010 and subsequent emergency appropriations bills to be unconstitutional and a nullity as violative of Article I, Section 10, Clause 1 of the United States Constitution insofar as they deny payment of the four percent (4%) raise for employees required by the Agreements for Executive Branch employees, and fail to include funding for contributions to the CSEA EBF for Executive Branch employees and employees of UCS as required by the Agreements for Executive Branch employees and the UCS Agreement;

(b) Declaring that legislation that mandates furloughs without pay of Executive Branch employees to be unconstitutional and a nullity as violative Article I, Section 10, Clause 1 of the United States Constitution as to the extent such legislation lowers salary levels mandated in the Executive Branch Agreements;

(c) Permanently enjoining legislation that impairs the Agreements between CSEA and the Executive Branch, and CSEA and UCS; including legislation that mandates nullifying four (4%) percent salary increases; legislation that fails to include funding for contractual payments to the CSEA EBF; and legislation that provides for unpaid furloughs of Executive Branch employees;

(d) Directing Defendants to make immediate retroactive compensation to all CSEA represented employees for the four percent (4%) salary increase that they should

        have received pursuant to the Executive Branch Agreements;

(e)    Directing Defendants to make all employees covered by the Executive Branch Agreements whole for financial losses of any kind, including pension credits, as a result of Defendants' unconstitutional actions;

(f)    Directing Defendants to make the required contractual payments to the CSEA EBF pursuant to the Executive Branch Agreements and the UCS Agreement;

(g)    Directing Defendants to pay to Plaintiffs reasonable attorneys fees and the costs and disbursements of this action; and,

(h)    Granting such other and further relief as this Court may deem just and proper.

Dated: Albany, New York
May 10, 2010

                                                  Yours, etc.,

                                                  NANCY E. HOFFMAN
                                                  Attorney for Plaintiffs

                                                  */s Steven A. Crain*
                                                  _____
                                                  Steven A. Crain (103985) and
                                                  Timothy Connick (506163), of counsel
                                                  Civil Service Employees Association, Inc.
                                                  Box 7125, Capitol Station
                                                  143 Washington Avenue
                                                  Albany, New York 12224
                                                  (518) 257-1443
                                                  steven.crain@cseainc.org
                                                  tim.connick@cseainc.org

PL/10-0645/SAC/ks/Complaint/#145367