**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF NEW YORK**
_____

**DANNY DONOHUE, as President of the Civil Service Employees Association, Inc., Local 1000, AFSCME, AFL-CIO, and CIVIL SERVICE EMPLOYEES ASSOCIATION, INC., LOCAL 1000, AFSCME, AFL-CIO,**

                             Plaintiffs,

   -against-

**DAVID A. PATERSON, as Governor of the State of New York, NEW YORK STATE ASSEMBLY, NEW YORK STATE SENATE, JONATHAN LIPPMAN, as Chief Judge of the New York Unified Court System, and the STATE OF NEW YORK,**

                             **Defendants.**
_____

**AFFIDAVIT OF ROSS HANNA**

Civil Action No.
10-CV-00543(LEK)(DRH)

**STATE OF NEW YORK** )
                           )ss.:
**COUNTY OF ALBANY** )

      **ROSS HANNA**, being duly sworn, deposes and says:

      1.    I am employed by the CIVIL SERVICE EMPLOYEES ASSOCIATION, INC., LOCAL 1000, AFSCME, AFL-CIO (hereinafter "CSEA") as Director of Contract Administration and have been the CSEA Chief Negotiator for State contracts since 1989.  As such, I am fully familiar with the collective bargaining negotiations between CSEA and the State of New York, and am fully familiar with the facts and circumstances herein.

      2.    I submit this affidavit in support of CSEA's request for an injunction enjoining and restraining Defendant Governor Paterson and the State of New York from: 1) imposing a furlough on state employees; 2) failing to pay collectively negotiated wage increases; and 3) failing to make collectively negotiated financial contributions to the CSEA Employee Benefit Fund, all of

which violate the State's obligations under the collectively negotiated agreements between CSEA and the State of New York.

## BACKGROUND

3. CSEA is the exclusive representative for approximately 68,300 employees of the Executive Branch of the State of New York under four separate collective bargaining units: the Administrative Services Unit ("ASU"), the Operational Services Unit ("OSU"), the Institutional Services Unit ("ISU") and the Division of Military and Naval Affairs ("DMNA").

4. CSEA also represents a separate statewide unit comprised of approximately 6,200 employees of the State of New York Unified Court System (hereinafter "UCS"). A separate collective bargaining agreement has been negotiated between CSEA and the State covering the UCS employees ("UCS Agreement").

## CONTRACT NEGOTIATIONS

5. CSEA and the Executive Branch of the State are parties to four collective bargaining agreements, one for each of the four units, covering the period of April 1, 2007 through March 31, 2011 (hereinafter the "Agreements").

6. The current Agreements were executed by the State and CSEA on February 1, 2008.

7. During negotiations, the State's position regarding employee salaries and benefits was to provide lower increases in the early years of the Agreements, postponing higher increases until the end of the term of the Agreements.

8. As such, the resultant Executive Branch Agreements were "back-loaded" to reflect three percent (3%) salary increases for fiscal years 2007-2008, 2008-2009 and 2009-2010, and an increase to four percent (4%) for fiscal year 2010-2011.

9.      Similarly, the resultant Agreements provided no retroactivity for contributions in 2007 to the CSEA Employee Benefit Fund, which supplies various health and welfare benefits for CSEA members, in exchange for a lump sum payment in 2011.  CSEA in turn agreed to various concessions, such as increased employee payments for basic medical deductibles and increases in co-pays for various medical treatments.

## THE FAILURE TO PAY THE CONTRACTUAL SALARY INCREASE

10.     In each of the four Executive Branch Agreements between CSEA and the State, Article 7 provides for salary increases to be implemented in the beginning of each fiscal year:  a three percent (3%) salary increase for fiscal year 2007-2008, a three percent (3%) salary increase for fiscal year 2008-2009, and a three percent (3%) salary increase for fiscal year 2009-2010. A copy of Article 7 of the statewide Agreements is attached hereto as Exhibit "A."

11.     At the beginning of fiscal years 2007, 2008 and 2009, the three percent (3%) salary increases were implemented on the dates specified in each of the Agreements.

12.     Article 7 further provides for a four percent (4%) salary increase for fiscal year 2010-2011 beginning on or about March 25, 2010 for employees on the Institutional payroll and on or about April 1, 2010 for employees on the Administrative payroll.[1]

13.     However, in April 2010, the Governor introduced Program Bill Number 234, which did not include the four percent (4%) contractual salary increases due to Executive Branch employees pursuant to Article 7 of the Agreements.

14.     This bill was approved by the Legislature on April 12, 2010.

15.     Each week since April 12, 2010, the Governor introduced, and the Legislature

---

[1] There are two payrolls for Executive Branch and DMNA employees: the institutional payroll and the administrative payroll. The DMNA increase for the respective payrolls was due on April 2 and March 26, 2010.  Hanna Affidavit, Exhibit A.  The UCS received its 4% salary increase on time.

approved, funding bills that omit the four percent (4%) salary increases required by the Agreements.

16. CSEA represents many State workers who are among the lowest wage earners in the State workforce. More than half of CSEA represented State workers earn less than $45,000 per year, with over 14,000 members earning less than $30,000 annually.

17. For these members, a four percent (4%) salary increase translates to $800 to $1,800 per year.

18. For these individuals, the loss of a 4% increase in wages is substantial.

### THE MANDATORY STATEWIDE FURLOUGHS

19. Appendix VI of the statewide Agreements (Appendix I of the DMNA Agreement) contains a negotiated salary schedule denoting fixed salaries determined by State grade level and years of service. A copy of Appendix VI of the statewide Agreements (Appendix I of the DMNA Agreement) is attached hereto as Exhibit "B."

20. The salary schedules contained in Appendix VI are fixed annual salaries based on the work of one calendar year; employees are not paid an hourly rate.

21. On May 7, 2010, the Governor submitted an emergency appropriations bill to the Legislature which directs that CSEA represented Executive Branch employees are to be furloughed one day per week.

22. Prior to submitting this bill, the Governor and the Division of the Budget began preparations for the implementation of the furlough. Attached hereto as Exhibit "C" is a copy of the memorandum to that effect.

23. The bill has now been passed by the Legislature.

24. Based on previous statements made by the Governor, including in a press release

dated April 27, 2010, it is "his intentions to include one furlough day per week for most Executive Branch State employees during each weekly emergency appropriations bill period until a responsible final 2010-11 budget is passed." A copy of the April 27, 2010 press release is attached hereto as Exhibit "D."

25. The Governor's proposed furlough of one day per week for an unknown number of weeks will greatly diminish the actual salaries received by employees covered under the Agreements.

26. For example, the negotiated salary for State Salary Grade 1, Step 1 (on the fiscal year 2009 salary schedule) is $21,193 per year, which calculates to approximately $815.00 gross per biweekly pay period. By shortening CSEA members' work week by one day, these members will lose twenty (20%) percent of their income, or approximately $163.00.

27. Likewise, the negotiated salary for State Salary Grade 13, Step 6 is $46,507 per year, which calculates to approximately $1,789 gross per biweekly period. By shortening CSEA members' work week by one day, these members will lose twenty (20%) percent of their income, or approximately $358.00, from each biweekly paycheck.

28. The sudden and dramatic decrease in salary will have a substantial impact upon many thousands of CSEA represented state employees covered by the Agreements.

29. Additionally, Article 10 of the statewide Agreement allows employees under certain conditions to utilize accrued paid vacation and sick time while on leave from employment with the State. A copy of Article 10 of the statewide Agreements is attached hereto as Exhibit "E."

30. The Governor's May 7, 2010 emergency appropriations bill prohibits Executive Branch employees covered by the Agreements from utilizing their negotiated leave time to cover the loss of pay for days they are furloughed.

31. Thus, CSEA members have no way to even attempt to offset their substantial

losses, and will suffer yet an additional impairment to their contractual rights and benefits under the statewide Agreements.

32. Furthermore, by reducing the number of days employees work, the Governor is directly impacting other contractual and legal benefits that are based on the number of days worked during the calendar year. For a few examples, members will earn less State service time for retirement purposes, negatively impacting their pension benefits and retirement plans; and their coverage under the Family Medical Leave Act and accompanying benefits could be negatively impacted.

## THE FAILURE TO PAY THE CSEA EMPLOYEE BENEFIT FUND

33. The CSEA Employee Benefit Fund (hereinafter "EBF") was created by and through the provisions of Article 30, Sections 30.1 and 30.2 of the four statewide Agreements, Article 20 of the DMNA Agreement, and by Articles 22 and 14.5 of the UCS Agreement. Attached hereto as Exhibit "F" is a copy of Article 30 of the statewide Agreements and Article 20 of the DMNA Agreement and as Exhibit "G" is a copy of Articles 22 and 14.5 of the UCS Agreement.

34. These provisions, along with the contracts negotiated thereunder, require the State to deposit a specific amount of money into the EBF by a specific date.

35. Pursuant to Article 30, Section 30.1 of the statewide Agreements, CSEA and the State entered into a contract establishing and sustaining the EBF. A copy of that contract, dated March 21, 2008, is attached hereto as Exhibit "H."

36. Similarly, Article 22 of the UCS Agreement requires the parties to enter into a contract to create and sustain the EBF and requires the State to deposit a specific amount of money into the fund by a specific date. A copy of that contract, dated October 7, 2008, is attached hereto as Exhibit "I."

37. The UCS Agreement also contains a provision at Article 14.5 requiring the State

to provide an additional $250,000 to the EBF. *See*, Exhibit G, p. 72.

38. The statewide EBF account is funded solely through the negotiated State payments set forth in the contract provisions and provides the only available dental and vision benefits, as well as assistance with prescription co-pays and other benefits for approximately 68,300 State employees and 6200 UCS employees and their dependents, totaling 208,000 participants.

39. The most recent payments to the EBF from the State and UCS, due on or about April 1, 2010, should have been received weeks before the date of this affidavit, but have not been received.

40. The Governor's refusal to provide payments to fund the EBF will result in the exhaustion of the EBF statewide account by or before July 1, 2010.

41. The exhaustion of the EBF statewide account will have an immediate and substantial effect on all CSEA members and their families, especially those who are currently involved in ongoing treatment under the EBF benefit plans, as these members will no longer be covered for benefits and will be either forced to pay exorbitant expenses to continue coverage for their treatments or forego treatment altogether.

42. The exhaustion of the EBF statewide account will cause irreparable harm to its business network, as it will have to notify more than 2000 providers that they will lose the business of over 70,000 members and their families. Once closed down, the EBF will be hard pressed to regain the business trust of these health providers, let alone re-establish its administrative staff to re-open and serve its constituents.

## **CONCLUSION**

43. CSEA represents the State employees who are among the lowest paid of the State workforce, many if not most of whom survive from paycheck to paycheck.

44. These workers have suffered the loss of a negotiated salary increase, are

threatened with the additional loss of one day of pay per week through a furlough, with its concomitant impact upon retirement dates, pensions and other benefits, and the possible loss of coverage for vision, dental, prescription co-pay and other benefits, unexpectedly and all in a matter of a few weeks.

45. These losses are individually and collectively substantial and will continue to have a devastating financial impact on thousands of State workers.

46. The Governor's refusal to pay the 2010 four percent (4%) salary increases and to make payments to the CSEA Employee Benefit Fund, and his mandating CSEA furloughs while refusing to allow members to utilize their accrued contractual leave time, individually and cumulatively constitute a substantial impairment of the statewide Executive Branch Agreements and the UCS Agreement.

47. It is respectfully submitted that Defendants should be enjoined and restrained from refusing to pay their contractual obligations and from mandating a furlough for CSEA bargaining unit members.

                                                                                                                   _____

                                                                                                                    ROSS HANNA

Sworn to before me this
\_\_\_\_\_ day of May, 2010.

_____
NOTARY PUBLIC - STATE OF NEW YORK

PL/10-0645/SAC/ks/Affidavit.Hanna#144350